TALIAFERRO, Judge.
This is a tort action in which plaintiff seeks to recover of the defendant a large amount in damages allegedly sustained by him as a result of an accident wherein was involved plaintiff’s automobile and a truck of the defendant, Long Springs Lumber Company, Inc. The accident occurred on what is known as the Dorcheat State Highway, a few miles north of Minden in Webster Parish, at a point where a gravel road leading to defendant’s saw mill intersects said highway on the east side at a right angle. The gravel road does not extend westerly beyond said highway. It there comes to a dead end.
Plaintiff was driving his own car on the highway, going north, while the truck was being driven by defendant’s employee, a Negro named Louis Sheppard. It had been *408 driven from the mill site, not very far east of the intersection, and was destined to go south after getting on the highway. Besides Sheppard there were two other men in the truck, to-wit: H. L. Aubrey and Martin J. Morris, employees of the lumber company.
The highway is surfaced with what is referred to as black-top, and at the time of the accident a light rain was falling and the surface was slick.
In addition to the lumber company, its insurer, Maryland Casualty Company, is impleaded as a defendant but herein, when defendant is used, reference is made to the lumber company.
On the east side of and adjoining the highway, and immediately below the intersecting gravel road, at the time of the accident, there was a small “shotgun” house that obscured the view of motorists going north on the highway, and likewise affected the vision south of those who traveled westerly on the gravel road.
The accident occurred at about ten o’clock A. M., September 27, 1946. Plaintiff was injured and his car badly damaged when he lost control of it, after contacting the truck, and ran into a ditch on the east side of the highway and north of the gravel ro.ad. Neither the truck or either of its occupants was injured to any extent.
Plaintiff alleged that he was driving at a moderate rate of speed and immediately before entering the intersection the truck of the defendant “came out of the gravel road onto the highway directly in front of petitioner’s car, and too close for petitioner to have time to stop”; that he, in attempting to avoid the impending accident, pulled his car as far as possible to his right and tried to pass the rear end of the truck, but failed in the effort. He further alleged that the driver of the truck gave no signal of his approach, did not stop and look for traffic before entering the intersection, and was driving at an excessive rate of speed under the then existing circumstances and conditions.
Defendants, in opposition to the cause of action alleged against them, deny the charge that the accident happened from or because of negligence of the truck driver, whose freedom therefrom is affirmatively pleaded. In amplification of these allegations, defendants aver that the driver of the truck did stop before entering the intersection and looked each way for traffic and saw plaintiff’s car to his left, nearly a quarter of a mile south, coming at a rapid rate of speed, but he felt certain he could negotiate the intersection and gain the west side of the road before the car could get there, and undertook to do so; that he succeeded in the effort and had progressed south on his side of the road seventy-two feet before plaintiff’s car collided with the truck; that plaintiff’s high rate of speed and the condition of the surface of the road caused his car to wobble across the road and finally to contact the truck’s rear end, which caused him to lose control of it and run into the ditch.
Alternatively, the defendants invoke the negligence of the plaintiff in the respects above mentioned, in bar of his effort to recover in this suit.
There was judgment for plaintiff against the defendants in solido for Three Thousand Three Hundred Seventy-Nine and 43/100 ($3,379.43) Dollars, made up of the following items:
Pain and suffering $1,000.00
Partial disability 1,000.00
Loss of time 1,000.00
Damage to automobile 246.43
Doctor’s bill 133.00
Defendants appealed and argue that if there is liability at all herein to plaintiff, the award of damages against them is excessive. Plaintiff answered the appeal and prays that the judgment be increased to the full amount for which he sued.
It is difficult to conceive of a case in which the testimony of the two sides could be more at variance. The irreconcilable character of the testimony is complete. The trial judge, in written reasons for judgment, recognized this situation and resolved the factual issues in plaintiff's favor because of some physical facts and also because plaintiff’s theory of the case, he believed, to be the more reasonable one.
Plaintiff’s car enjoyed right of way over traffic on the side road that led *409 to the mill. It was the legal duty of drivers of motor vehicles on the side road to stop and look for traffic in each direction on the highway before undertaking to cross it, and not to enter thereon unless and until traffic conditions clearly warranted such action. This duty is imposed with emphasis upon all motorists who purpose to make a left turn from one road or street across an intersection. However, because plaintiff had the right of way did not excuse him from the exercise of reasonable diligence as he approached the intersection, to avert an accident made possible by the negligence of one emerging from the side road.
The driver of the truck testified that he did stop at the east side of the intersection and looked both ways before proceeding farther; that he saw plaintiff’s car down the road near the top of a rise therein, which the testimony shows to be a distance of approximately four hundred yards; that he believed he had ample time to cross the intersection and gain the west side of the highway without danger of a collision with the car; that he succeeded in his effort in this respect and had traveled seventy-two feet, on his side of the road, below the intersection, when the collision occurred.
Mr. Aubrey’s testimony corroborates that given by Sheppard, the truck driver, and he added that the right wheels of the truck were off of the hard surface, and he was certain that plaintiff’s car, while going very fast, did not wobble until after passing the truck.
The witness, Morris, also an occupant of the truck, was uncertain whether the truck was stopped prior to entering the intersection, but was sure it was slowed down to some extent. He corroborates the testimony of Aubrey and Sheppard as regards plaintiff’s position when the truck was driven into and across the intersection and the truck’s position when struck, but fixes its distance from the intersection at thirty-seven steps or about one hundred eleven feet He also stated, on direct examination, that he stepped this distance the day of the accident, but on cross examination, admitted he only did so on the day of the trial.
Amos Calton, occupant of the “shotgun” house, testified that he was on its front porch and saw the accident; that the truck had straightened out on its right side of the highway and was below the house when the accident occurred.
A truck driven by Gilbert McDowell, preceding that driven by Sheppard, met plaintiff eighty-four yards from the intersection. McDowell did not see the accident nor hear the noise of the impact, but, according to his testimony, immediately thereafter he looked back northerly and saw the other truck had stopped seventy-two feet from the intersection. Other witnesses say it was this distance from the intersection when the collision occurred. Surely it must have traveled some distance before being stopped.
Plaintiff testified that he was driving at forty-five miles per hour as he approached the intersection; that as he was meeting the truck driven by McDowell about one hundred feet from the intersection, he slightly applied his brakes and released same after passing him, and when approximately thirty-five feet from the intersection the other truck appeared before him, going at a moderate rate of speed; that he applied the ■ brakes and locked all four wheels, and veered his car to its right as far as possible without running into a culvert at the road side; that both right wheels were off of the black-top when the accident occurred and that the truck had not completed the turn prior thereto; that the left rear corner of its fiat bed extended so far easterly across the road that he was unable to pass same without colliding with it; that the corner of the flat truck bed scraped his car from about the center of its left side back to the rear end thereof, and he lost control of it. He is positive that after the collision the truck rested diagonally across the road on the south side of the intersection, but was pulled up a few feet by its driver to allow traffic to pass^ He is positive the truck did not stop before entering the intersection, and says he. did not see it until it reached the intersection; that had he not suddenly pulled his car to its right side, the collision would have been much more serious in its consequences.
*410 A minute or two after the accident occurred, Mr. C. L. Sales, accompanied by Mr. W. F. Waldron, drove up to the scene of the accident. Plaintiff was then getting out of his car. Mr. Sales testified that at that time the truck was resting diagonally across the highway with part of its rear end above the south line of the intersection. There was then room for traffic to pass on the east side of the truck. He observed skid marks on the black-top and on the shoulder going in the direction of plaintiff’s car, which began about the point below the intersection that plaintiff says he was, when he first saw the truck coming from the gravel road and applied the brakes.
Mr. Waldron’s testimony as to the location of the truck when he and Mr. Sales arrived on the scene, is practically the same as that of Mr. Sales. Two other witnesses introduced by plaintiff, who were near the scene of the accident, corroborated his testimony as to the location of the truck when hit by the car, and that the truck did not come to a stop before entering the intersection.
The foregoing summary of the testimony introduced by both sides reflects clearly the irreconcilable character of the evidence in this case. Concerning this situation we adopt what the lower court had to say, to-wit:
“In this situation, being unable to reconcile the testimony, the only thing that can be done is to take the most reasonable version, which to me, appears to be that of plaintiff. Whether the accident occurred 72 feet south of the intersection or in or nearer to it, loses its importance when all the facts and physical surroundings are considered. I have been familiar with the Dorcheat road for some 40 years, and lately have driven over it many times. From the top of the hill 3/10 of a mile south of the intersection there is visible the house referred to in the testimony, and some mail boxes in front of and beyond the house, but the road is not logged for a side road, and the road is not visible (though plaintiff knew the road was there), and it is not possible to see traffic from the side road until it is right up to the edge of the Dorcheat road. Likewise, it is not possible for drivers of vehicles leaving the side road to see traffic approaching from the south until the vehicles are very near the edge of the Dorcheat road.
“In such case, it is negligence for a. driver to enter the intersection in the face1 of oncoming traffic. The truck driver saw plaintiff’s car approaching at a. rather fast rate of speed, estimated by defendants’ witnesses to be SO or 60 miles per hour. He says he had plenty of time to get into the-highway, and on to his right side, and that he did, before he met plaintiff, but it is passing strange that if his truck was entirely straight on the road, that plaintiff’s car passed by the front part of the truck, and struck only the left rear corner of it. The only reasonable conclusion that can be reached is that the truck had not straightened out on the road, and that its back end was still occupying a part of the east side of the road, and if this is so, it is immaterial whether the accident occurred at the intersection or 72 feet south of it, as defendants’ witnesses say. The truck driver was mistaken in his conclusion that he could safely clear the road before the approaching car would be passing him, and his negligence was the proximate cause of the accident and resulting damage.”
It is also of no little significance that the skid marks of plaintiff’s car began about the spot where plaintiff says he applied his. brakes when he realized a collision was almost inevitable.
We have no difficulty in reaching' the conclusion that Sheppard did not stop-his truck before undertaking to cross the intersection. However, accepting his contrary contention, his negligence is just a& great because, if, as he says, he did stop,, he thereafter attempted to cross the intersection in the face of an oncoming car, enjoying right of way, that was seen by him before making the attempt. If he erred in estimating the speed of the car and the distance it was away, the blame must rest upon him. It was daylight and he should have been able to determine definitely whether it was safe to undertake negotiating the intersection.
Plaintiff was not driving at an unlawful rate of speed as he approached the. inter *411 section. He knew the location of this settlement road but was not required to reduce his speed, as he approached it, since there appeared no circumstance or condition to require that he do so. He had the right to assume, as doubtless he did, that motorists coming- out of the side road would stop before entering the highway and see that which was to be seen, and govern themselves accordingly. But, even though it be conceded, arguendo, that plaintiff’s speed, in view of the road’s surface condition, was unreasonable and excessive, his negligence in this respect was not the or a proximate cause of the accident. Driving the truck into the intersection under the pending circumstances and conditions was the proximate cause thereof.
Plaintiff suffered what is known as an acromioclavicular of the right shoulder, which means a separation of the wing bone of the shoulder from the collar bone and shoulder blade. It is a very painful injury. The ligaments and tissues about this joint were torn. He was placed in a figure eight cast that was designed to hold the bones in place. This cast goes around the injured shoulder and across the other one and is quite uncomfortable. It was kept in place for three weeks and was then removed to ascertain how much union had taken place.
Plaintiff’s attending physician suggested to him that he return to work on November first, which was thirty-five days after being injured. This was advised in order to determine if the tissues would hold. The experiment was not successful, and the doctors advised him to not work for three or four more weeks, during which time heat treatments were administered and he rested. He was seen by the doctor about December first and at that time pain from the injury was sufficient to prevent him from working. The doctor last saw him in February. There was then some looseness of the joint, accompanied by pain, especially when he pressed down with his hand. The doctor thought he could then do some character of work but that there would continue pain in certain movements for possibly a year.
Plaintiff testified at date of trial on May 9, 1947, that he still has pain in his right shoulder and arm, which at times prevents him from doing his work as well as he should, and that he cannot sleep on his right side. He has to favor the right shoulder in performing any sort of heavy work, as there still exists danger of tearing loose the healed ligaments and tissues.
Plaintiff was an able-bodied man, an oil field worker, prior to being hurt. He earned large wages which he lost for many weeks. His total incapacity to do regular work was followed by partial disability of an undetermined duration.
We think the various awards of damages given by the trial judge in this case were not excessive nor inadequate. Our appreciation of the record, as a whole, very well sustains his conclusion with respect thereto. And, for the reasons herein assigned, the judgment appealed from is affirmed with costs.
KENNON, J., absent.